Case No. 21-10356

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JEFF CARPOFF,
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:20-cr-00017-JAM
Honorable John A. Mendez, United States District Judge

---

**DEFENDANT-APPELLANT JEFF CARPOFF'S REPLY BRIEF**

---

Alexis Haller, CSBN 201210
LAW OFFICE OF ALEXIS HALLER
7960B Soquel Drive, #130
Aptos, California 95003
Telephone: (831) 685-4730
Facsimile: (831) 603-4041

Attorney for Defendant-Appellant
Jeff Carpoff

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    Pursuant to Ninth Circuit Law, the Appellate Waiver Did Not
      Extend to Mr. Carpoff's Rule 32(i)(1)(A) Claim . . . . . . . . . . . . . . . . . . . . 2

II.   Because the District Court's Violation of Rule 32(i)(1)(A) Was
      Not Harmless, the Court Should Remand for Resentencing . . . . . . . . . . . . 9

      A.    The Government Concedes that the District Court
            Violated Rule 32(i)(1)(A) at Mr. Carpoff's Sentencing . . . . . . . . . . 9

      B.    The Government Effectively Concedes that the Error Was
            Not Harmless Under this Court's Precedent . . . . . . . . . . . . . . . . . . . 9

      C.    Even if Considered, the Government's Harmless Error
            Argument Confirms that the Case Should Be Remanded
            for Resentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            1.    Relevant Procedural and Factual Background . . . . . . . . . . . . 11

            2.    Even Accepting *Arguendo* the Government's Own
                  Harmless Error Formulation, the Case Should Still Be
                  Remanded for Resentencing . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Armour & Co. v. Wantock*,
  323 U.S. 126 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Banuelos-Ayon v. Holder*,
  611 F.3d 1080 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Boswell v. Pliler*,
  No. C 01-3826 PJH (PR), 2006 WL 3490993
  (N.D. Cal. Dec. 1, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cohens v. State of Virginia*,
  19 U.S. 264 (1821) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Erickson v. Courtney*,
  702 F. App'x 585 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gonzalez–Servin v. Ford Motor Co.*,
  662 F.3d 931 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*,
  456 F.3d 978 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Guzman v. Ryan*,
  No. CV07-0295PHX-SMM JRI, 2009 WL 1066239
  (D. Ariz. Apr. 21, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lockett v. Ericson*,
  656 F.3d 892 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Murdoch v. Castro*,
  609 F.3d 983 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rivera Vega v. Garland*,
  39 F.4th 1146 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Bibler*,
  495 F.3d 621 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Davila-Escovedo*,
    36 F.3d 840 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.7,16

*United States v. Fowler*,
    956 F.3d 431 (6th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Hahn*,
    359 F.3d 1315 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*United States v. Hicks*,
    No. 2:16-CR-150-JVB-APR, 2023 WL 166736
    (N.D. Ind. Jan. 12, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Lugo-Barcenas*,
    57 F.4th 633 (8th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Mendez-Gonzalez*,
    697 F.3d 1101 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Nunez-Pompa*,
    538 F. App'x 787 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 n.3

*United States v. Petty*,
    80 F.3d 1384 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,3,6 n.3,8

*United States v. Savage*,
    406 F. App'x 220 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*United States v. Singui*,
    779 F. App'x 484 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Soltero*,
    510 F.3d 858 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,9,10

*United States v. Sustaita*,
    1 F.3d 950 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 1,6 n.3,9,10

*United States v. Tinoco*,
    436 F. App'x 794 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 n.3

iii

*United States v. Wilson*,
    No. 115CR000464NONESKO, 2022 WL 17904539
    (E.D. Cal. Dec. 23, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATUTES AND RULES

18 U.S.C. § 3553(a)(1) and (a)(2)(A), (B) & (C) . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Crim. P. 32(i)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# INTRODUCTION

The government concedes that the district court violated Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure at Mr. Carpoff's sentencing hearing. The only two remaining questions before the Court are: (1) whether Mr. Carpoff's appellate waiver precludes raising this claim on appeal and (2) whether the district court's error was harmless. The government's position as to each of these issues contravenes Ninth Circuit law.

The waiver issue is controlled by *United States v. Petty*, 80 F.3d 1384 (9th Cir. 1996), wherein this Court squarely held that an appellate waiver does not preclude a defendant from raising a Rule 32(i)(1)(A) claim on appeal. The government brief's "see what sticks" approach to the waiver issue mischaracterizes *Petty* and ignores established principles of *stare decisis*. Under *Petty*, it is beyond cavil that the appellate waiver contained in the plea agreement – which could have, but did not, set forth a waiver of the district court's procedural errors at sentencing – does nothing to preclude Mr. Carpoff from raising his Rule 32(i)(1)(A) claim in this Court.

With respect to harmless error, the government does not rebut, and therefore effectively concedes, that the district court's violation was prejudicial under the standard set forth in *United States v. Sustaita*, 1 F.3d 950, 954 (9th Cir. 1993) and *United States v. Soltero*, 510 F.3d 858, 863 (9th Cir. 2007). The prejudice analysis contained in the government's brief is not only contrary to Circuit precedent, but also improperly relies on materials outside the appellate record – and was therefore

1

stricken by the Court's Order of February 28, 2023. Dkt. Entry 40. To the extent that any portion of the government's prejudice argument remains following the Court's Order, the government does not meet its conceded burden of showing that "it is clear that no prejudice resulted" given the importance of the alleged obstruction of justice facts at sentencing.

In light of the district court's prejudicial Rule 32(i)(1)(A) error at the sentencing hearing, this Court should vacate Mr. Carpoff's sentence and remand for resentencing.

## ARGUMENT

## I. Pursuant to Ninth Circuit Law, the Appellate Waiver Did Not Extend to Mr. Carpoff's Rule 32(i)(1)(A) Claim

Ninth Circuit law forecloses the government's argument that the plea agreement's appellate waiver extends to Mr. Carpoff's Rule 32(i)(1)(A) claim. *See* Answering Brief of the United States, Dkt. Entry 22 ("Gov't Br."), 16-23.

In *Petty*, this Court confronted a defendant's waiver, set forth in a stipulation, of "*any* right to further appeal[.]" 80 F.3d at 1387.[1] The Court found the waiver effective with respect to the defendant's double jeopardy claim. *Id.*; *see also Guzman v. Ryan*, No. CV07-0295PHX-SMM JRI, 2009 WL 1066239, at *16 (D. Ariz. Apr. 21, 2009) (explaining that *Petty* barred double jeopardy claim "by agreement to waive appellate rights"). However, the *Petty* Court held that the appellate waiver's all-

---

[1] Emphasis is added, and internal citations and quotations omitted, throughout this brief, unless otherwise indicated.

encompassing language did *not* reach the defendant's Rule 32(i)(1)(A) claim:

> In the absence of compelling evidence to the contrary, we do not interpret the language as a waiver of the right to appeal *a substantial violation which arose only after the stipulation was signed and which could not have been anticipated. We do not suppose that, had the court proceeded to sentence [the defendant] in absentia, this stipulation would have precluded an appeal. We see no basis for distinguishing the particular Rule 32 violation that did occur here, and therefore find that violation to be outside the scope of [defendant's] waiver.*

80 F.3d at 1387.[2]

The case at bar involves precisely the same violation at issue in *Petty*, namely the district court's failure to ensure at sentencing that the defendant had reviewed the presentence report with his attorney. *See Petty*, 80 F.3d at 1387-89; *see also* Defendant-Appellant Jeff Carpoff's Opening Brief, Dkt. Entry 12 ("AOB"), 19-20. Here, too, nothing in the plea agreement's appellate waiver indicated that it covered the district court's "substantial violation" of the Federal Rules of Criminal Procedure occurring over 21 months after the agreement was signed. If Mr. Carpoff had been sentenced *in absentia* on November 9, 2021, his appellate waiver would still have permitted him to raise that issue on appeal. There is "no basis for distinguishing the particular Rule 32 violation that did occur here, and therefore . . . that violation [is] outside the scope of [Mr. Carpoff's] waiver." *Petty*, 80 F.3d at 1387. Contrary to the government's contention, *Petty* is not an "outlier" (Gov't Br. 16), but rather Ninth Circuit precedent directly on point.

---

[2] As noted in the opening brief, Rule 32(i)(1)(A) appeared in Rule 32(c)(3) at the time *Petty* was decided.

3

Nonetheless, relying on *United States v. Mendez-Gonzalez*, 697 F.3d 1101 (9th Cir. 2012) and *United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007), the government argues that the Court should disregard *Petty*. Gov't Br. 18-22. The government's argument misunderstands not only *Mendez-Gonzalez* and *Bibler*, but also settled principles of *stare decisis.* Unlike *Petty,* neither *Mendez-Gonzalez* nor *Bibler* involved a claimed violation of Rule 32(i)(1)(A), and thus both cases – which never mention *Petty* – are inapposite to the appellate waiver issue presented here. *See Mendez-Gonzalez*, 697 F.3d at 1102 (challenge to a drug-testing condition of supervised release); *Bibler*, 495 F.3d at 623 (challenge to the district court's failure to apply the safety valve exception set forth in 18 U.S.C. section 3553(f)); *see also*, *e.g.*, *Cohens v. State of Virginia*, 19 U.S. 264, 399 (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."); *Armour & Co. v. Wantock*, 323 U.S. 126, 132-33 (1944) ("[W]ords of . . . opinions are to be read in the light of the facts of the case under discussion . . . . General expressions transposed to other facts are often misleading."). In any event, the panel decisions in *Mendez -Gonzalez* and *Bibler* post-date *Petty*, and therefore could not have overruled *Petty* even if those panels had intended to do so. *See*, *e.g.*, *Rivera Vega v. Garland*, 39 F.4th 1146, 1153 n.2 (9th Cir. 2022) ("We . . . cannot overrule a prior panel decision even if we disagree with it.").

The government fares no better with its heavy reliance on *United States v.*

*Savage*, 406 F. App'x 220 (9th Cir. 2010). *See* Gov't Br. 20, 22. As an unpublished opinion, *Savage* lacks any precedential value. *Savage*, 406 F. App'x at 221, n.*; *see also Banuelos-Ayon v. Holder*, 611 F.3d 1080, 1085 n.2 (9th Cir. 2010) (stating that "unpublished dispositions of our circuit have no precedential force"); 9th Cir. R. 36-3(a). Moreover, the government studiously avoids any mention of the actual waiver language at issue in *Savage*, even though it was discussed in the opening brief. *Compare* AOB 20 *with* Gov't Br., *passim*. In *Savage*, the defendant "expressly waived his right to appeal *'the manner in which [his] sentence [was] determined.'*" 406 F. App'x at 221 (brackets in original). Although the government routinely includes this exact language in its plea agreements in other cases (including in the Eastern District of California), no such language appears in Mr. Carpoff's appellate waiver. ER-108; *see also, e.g.*, *United States v. Hicks*, No. 2:16-CR-150-JVB-APR, 2023 WL 166736, at *1 (N.D. Ind. Jan. 12, 2023); *United States v. Wilson*, No. 115CR000464NONESKO, 2022 WL 17904539, at *3 (E.D. Cal. Dec. 23, 2022).

The government has also used other language – again absent in the instant case (ER-108) – to foreclose a defendant from raising a Rule 32(i)(1)(A) claim on appeal. *See United States v. Singui*, 779 F. App'x 484, 485 (9th Cir. 2019) (holding that Rule 32(i)(1)(A) claim was barred by plea agreement's waiver of "'*all of the procedures* and calculations used to determine and impose any portion of the sentence ... [and] the term of imprisonment imposed by the Court'") (brackets in original). The

government never explains why it failed to include any such language here.[3]

The government blames Mr. Carpoff for the language of the appellate waiver – and tries to construe any ambiguity therein against him – but this attempt to shift responsibility for the waiver's terms has the law exactly backwards. Gov't Br. 20-22; *see also United States v. Fowler*, 956 F.3d 431, 436 (6th Cir. 2020) (explaining that courts "hold the government to a greater degree of responsibility than the defendant for imprecisions or ambiguities in the plea agreements"). Indeed, this Court "steadfastly app[lies] the rule that any lack of clarity in a plea agreement should be construed against the government as drafter." *Lockett v. Ericson*, 656 F.3d 892, 897 (9th Cir. 2011); *see also* AOB 18-19, 20. "The *government* bears the burden to prove that the plea agreement clearly and unambiguously waives a defendant's right to appeal, and [courts] construe any ambiguities in the agreement against the government." *United States v. Lugo-Barcenas*, 57 F.4th 633, 636 (8th Cir. 2023); *see also*, *e.g.*, *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) ("In

---

[3] The government's reliance on other cases to attempt to undermine *Petty*'s precedential value is even further afield, since the cited cases are not only unpublished, but also do not involve a violation of Rule 32(i)(1)(A). *See* Gov't Br. 23; *see also United States v. Nunez-Pompa*, 538 F. App'x 787, 787 (9th Cir. 2013) (alleged violation of Rule 32(i)(4)(A)(ii) by not permitting defendant "to present letters from his family in mitigation of his sentence")*; United States v. Tinoco*, 436 F. App'x 794, 795 (9th Cir. 2011) (alleged violation of Rule 32(i)(4)(A)(ii)'s right of allocution). As noted in the opening brief, this Court has repeatedly emphasized the particular significance of a Rule 32(i)(1)(A) violation. *See Sustaita*, 1 F.3d at 954 (Rule 32(i)(1)(A) violation is "deplorable"); *Petty*, 80 F.3d at 1387 (holding that the failure to follow the dictates of Rule 32(i)(1)(A) constitutes a "substantial violation").

determining a waiver's scope, we will strictly construe[ ] [appeal waivers] and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights."). Here, the government could easily have added stock language to the plea agreement precluding appeals based upon procedural errors committed by the district court at sentencing, such as the language used in *Savage* or *Singui*. Since it failed to do so, the agreement remains at best ambiguous, and any ambiguity must be construed against the government and in favor of Mr. Carpoff's appellate rights.

With respect to sentencing, the plea agreement's waiver was limited to appeals of the "sentence imposed" and did not mention procedural errors at all, as the government itself concedes. ER-108; *see also* Gov't Br. 21 (acknowledging that the waiver did not mention "procedural Rule 32 violations"). This stood in sharp contrast to the waiver's broader language regarding challenges to Mr. Carpoff's conviction and plea, which covered "any and all constitutional and/or legal challenges to the defendant's conviction and plea." ER-108; *see also* AOB 19.[4] Moreover, while the plea waiver recognized that Mr. Carpoff "retain[ed] the right to appeal" if "the sentence imposed by the District Court exceeds the statutory maximum for all Counts" and/or if "the government appeals the sentence in the case[,]" nothing in the

---

[4] The government simply ignores this difference. Gov't Br., *passim*. Moreover, as noted in the opening brief – and again unrebutted by the government – the waiver with respect to collateral attack also contained broader language with respect to sentencing. *See* ER-108 (waiving the right to collaterally attack "*any aspect* of the . . . sentence, except for non-waivable claims"); *see also* AOB 19.

plea agreement stated – contrary to the government's current position (Gov't Br. 17, 21) – that these were the *only* two circumstances in which Mr. Carpoff retained the right to appeal.[5]  Finally, the fact that the plea agreement recognized that Mr. Carpoff waived appellate rights "in almost all cases" (ER-108) shows that there were exceptions – and, under *Petty*, the district court's unusual Rule 32(i)(1)(A) violation provided just such an exception.  *Petty*, 80 F.3d at 1387; *see also  Boswell v. Pliler*, No. C 01-3826 PJH (PR), 2006 WL 3490993, at *12 (N.D. Cal. Dec. 1, 2006) (stating that *Petty* constituted an "exception[] to the enforceability of [appellate] waivers").  Stated another way, given the government's sloppy drafting of the waiver clause and its failure to include the language in *Savage* or *Singui,* there is no "compelling evidence" that Mr. Carpoff's waiver reached "a substantial violation which arose only after the [waiver] was signed and which could not have been anticipated."  *Petty*, 80 F.3d at 1387.

In sum, under this Court's decision in *Petty*, which remains the law in the Circuit, the plea agreement's appellate waiver did not extend to the Rule 32(i)(1)(A) claim raised in this appeal.  80 F.3d at 1387.

\ \ \

\ \ \

\ \ \

---

[5] If the government had wanted these to be the "*only* two carveouts" (Gov't Br. 17, 21), it could easily have inserted the term "only" in the relevant portion of the plea agreement – which the government failed to do.  ER-108.

**II.    Because the District Court's Violation of Rule 32(i)(1)(A) Was Not Harmless, the Court Should Remand for Resentencing**

Since the government cannot show that it is clear that no prejudice resulted from the district court's conceded violation of Rule 32(i)(1)(A), the Court should remand for resentencing.

### A.    The Government Concedes that the District Court Violated Rule 32(i)(1)(A) at Mr. Carpoff's Sentencing

The government acknowledges that "[a]t sentencing the court did not ask Carpoff if he had reviewed the PSR."  Gov't Br. 14.  It is therefore uncontested on appeal that the district court violated Rule 32(i)(1)(A) at Mr. Carpoff's sentencing hearing.  AOB 22-23; *see also* Fed. R. Crim. P. 32(i)(1)(A) (providing that the district court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report").[6]

### B.    The Government Effectively Concedes that the Error Was Not Harmless Under this Court's Precedent

In the opening brief, Mr. Carpoff's prejudice analysis relied on this Court's decisions in *Sustaita* and *Soltero*.  To justify a remand under *Sustaita*, a defendant need only allege that "he failed to read the report and review it with his attorney." *Soltero*, 510 F.3d at 863; *see also Sustaita*, 1 F.3d at 954.  The defendant must also

---

[6] The government references the district judge's statement at the plea hearing that Mr. Carpoff would "'be able to read the presentence report before your sentencing hearing[]'" (Gov't Br. 14, *quoting* ER-92), but this Court has held that such advisements during a plea colloquy do not satisfy Rule 32(i)(1)(A)'s plain mandate.  *Soltero*, 510 F.3d at 863; *see also* AOB 23.

identify a "fact in the PSR he would have disputed had the sentencing judge afforded him the opportunity." *Soltero*, 510 F.3d at 863, *citing Sustaita*, 1 F.3d at 954. Relying heavily on *Sustaita* and *Soltero* – which together were cited seventeen times in the opening brief (AOB 16, 21, 22, 23, 25, 26) – Mr. Carpoff showed that he satisfied the prejudice standard set forth in this Court's precedent, since he proffered that he had not reviewed the report with his attorney and affirmed that he would have disputed the obstruction of justice facts in the report if afforded the opportunity. *Id.* at 23-26.[7]

The government's brief cites neither *Sustaita* nor *Soltero*. Gov't Br., *passim*. Yet ignoring binding precedent does not make it go away. *See*, *e.g.*, *Gonzalez–Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) (noting that the "ostrich is a noble animal, but not a proper model for an appellate advocate"). By failing to address the applicable prejudice inquiry discussed in the opening brief, the government effectively conceded that the error was not harmless under *Sustaita* and *Soltero*. *See*, *e.g.*, *Murdoch v. Castro*, 609 F.3d 983, 1000 (9th Cir. 2010) (en banc) (explaining that a party "effectively concede[s] [an argument] by not responding to it"); *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 992 (9th Cir.

---

[7] In support of its all-encompassing prejudice theory, the government cites only *United States v. Davila-Escovedo*, 36 F.3d 840 (9th Cir. 1994). Gov't Br. 23. However, *Davila-Escovedo* in fact acknowledged *Sustaita* and found harmless error only because (a) the appellant had "made no affirmative allegation that he failed to read the report" and (b) there was no "factual dispute" between the parties. 36 F.3d at 844. That is the exact opposite of the situation here.

2006) (holding that a party "effectively concedes" argument by failing to present it "in its briefs"); *Erickson v. Courtney*, 702 F. App'x 585, 588 (9th Cir. 2017) ("The respondent does not address these contentions in its briefing, thus effectively conceding [appellant's] arguments."). Accordingly, this Court should vacate Mr. Carpoff's sentence and remand for resentencing.

### C. Even if Considered, the Government's Harmless Error Argument Confirms that the Case Should Be Remanded for Resentencing

Instead of undertaking the harmless error inquiry required by *Sustaita* and *Soltero*, the government engages in a wide-ranging prejudice analysis, which is both unhinged from this Court's precedent and based upon extensive facts outside the record on appeal. Gov't Br. 7-11, 23-32. The Court has already stricken "the portions of the Answering Brief that rely [on the supplementary material]." Order, Dkt. Entry 40. The Court should reject any remaining portions of the government's prejudice argument as contrary to *Sustaita* and *Soltero*. Even if considered by the Court, the government cannot show that "it is clear that no prejudice resulted" given the importance that the government and the district court attached to the alleged obstruction of justice facts at sentencing.

### 1. Relevant Procedural and Factual Background

The plea agreement resolved most of the issues for Mr. Carpoff's sentencing, including the guidelines calculation (ER-104–107), the forfeiture of property (ER-99–100), and the likely restitution amount (ER-96–97). The agreed-upon guidelines calculation, which included an obstruction of justice enhancement, yielded an

11

effective sentencing range of 30 years in prison, the statutory maximum. ER-41, ER-106–107.[8]  The plea agreement also stipulated to the facts of the underlying scheme (ER-95), though the parties' stipulation did not include any facts related to obstruction of justice. ER-111–120.  The main issue reserved for sentencing was whether Mr. Carpoff would receive a sentence of thirty years (as advocated by the government (ER-101)) or lower (as requested by the defense (ER-107)).[9]

The Presentence Report, filed August 2, 2021, stated the following regarding Mr. Carpoff's conduct after the execution of the search warrants in December 2018:

> After the search warrants were executed, J. Carpoff contacted Bayliss to meet him at a restaurant in Martinez, California. When Bayliss arrived at the restaurant J. Carpoff and P. Carpoff were present. J. Carpoff told Bayliss he would set aside $200,000 to cover Bayliss' legal fees and P. Carpoff did not agree. J. Carpoff then instructed Bayliss to get a "burner" telephone and travel to a company warehouse in Nevada to destroy evidence. J. Carpoff told Bayliss to destroy a collection of replacement VIN stickers for [mobile solar generators ("MSGs")] and then scrape off VIN numbers from approximately 200 MSGs in the warehouse. Bayliss told agents in addition to scraping of the VIN stickers from the MSGs, he also destroyed at least 1,000 replacement VIN stickers.

PSR ¶ 29.  Defense counsel did not object to any of the facts set forth in paragraph 29. *See* Letter from Mr. Malcolm Segal to Probation Officer Lynda Moore, dated

---

[8] This would have been the range irrespective of the obstruction of justice enhancement.  AOB 25 n.3.

[9] The plea agreement provided that the defense could not request a custodial sentence of less than twenty-five years.  ER-107.  However, at the plea colloquy, the district judge noted that he was not bound by the parties' sentencing recommendations.  ER-88.

July 27, 2021 (second attachment to the PSR).

The length of the custodial sentence imposed on Mr. Carpoff, to be resolved in light of the factors set forth in 18 U.S.C. section 3553(a) (ER-104), was the focus of the parties' respective sentencing memoranda. ER-40–76. On the first full page of its sentencing memorandum – just after its list of section 3553(a) factors that "support the sentence recommended by the government" – the government argued that the execution of multiple search warrants in December 2018 "did not mark the end of Carpoff's criminal conduct." ER-41. The government's memorandum continued:

> After investigators executed the search warrants, Carpoff instructed coconspirator Joseph Bayliss to get a burner telephone and travel to a company warehouse in Nevada to destroy evidence, including 1,000 replacement VIN stickers and hundreds more to be scraped off mobile-solar generators; Bayliss did as Carpoff instructed. PSR ¶ 29.

ER-41; *see also* ER-42 (again referencing paragraph 29 of the PSR). The defense's sentencing memorandum, in turn, highlighted Mr. Carpoff's post-offense cooperation with the government and assistance to victims to help recover funds. ER-55–56, ER-63–65, ER-73–75.

At the sentencing hearing, the prosecutor argued for a thirty-year sentence based in part on the post-search conduct:

> So I submit that evidence indicates that at a certain point it became pretty clear it was not going to turn around, and what this was about was the money. It was about the luxury, and it was about keeping it going without getting caught. And that remained true even after the search warrants were executed when he sent Mr. Bayless (sic) to Nevada to go destroy those VIN stickers.

13

ER-15. The district judge expressed his agreement with the prosecutor about the significance of this alleged obstructive conduct, leading to the tense exchange with Mr. Carpoff described in the opening brief. AOB 24; ER-33. Shortly thereafter, applying the section 3553(a) factors, the district court accepted the government's sentencing recommendation and imposed a thirty-year custodial sentence. ER-34–35.

### 2. Even Accepting *Arguendo* the Government's Own Harmless Error Formulation, the Case Should Still Be Remanded for Resentencing

In arguing that the error was harmless, the government claims that any dispute about Mr. Carpoff's alleged obstruction of justice is a "minor quibble" that "does not matter[,]" including because Mr. Carpoff's offense level and Guidelines range "would have been the same regardless of the two-level obstruction enhancement." Gov't Br. 26-27, 29, 31. This argument begs the question: if the alleged obstruction of justice facts were unimportant and did "not matter," why did the government highlight them on the first full page of its sentencing memorandum? *See* ER-41, *citing* PSR ¶ 29 (arguing that the execution of the search warrants "did not mark the end of Carpoff's criminal conduct" and stating that Carpoff instructed Bayliss to scrape "hundreds" of VIN stickers off of MSGs in Las Vegas).

The truth is that the alleged obstruction of justice facts *did* matter. Given that most of the sentencing issues had already been resolved by the plea agreement, the key issue at sentencing was the length of Mr. Carpoff's custodial sentence. ER-101, ER-107. Since the parties stipulated to the facts occurring prior to the search warrant

executions (ER-111–120), Mr. Carpoff's conduct *after* the collapse of the scheme had an outsized importance at the sentencing hearing. ER-41–42, ER-55–56, ER-63–65, ER-73–75. The defense emphasized Mr. Carpoff's extraordinary efforts in assisting in asset recovery and his extensive cooperation with the government. ER-75. The government, in turn, focused on Mr. Carpoff's obstructive conduct after the search warrant execution. ER-14–15, ER-41–42.

In this context, the post-search conduct was important not because of the offense level (which was level 43 irrespective of the section 3C1.1 enhancement) or the effective sentencing range (which was the statutory maximum of 30 years regardless of any obstruction). The reason that the government highlighted the alleged obstructive conduct is that it was relevant to the sentencing factor analysis under section 3553, which provided Mr. Carpoff's only chance to receive a sentence below 30 years. Indeed, the government's sentencing memorandum specifically linked the alleged obstruction conduct to the section 3553 factors. *See* ER-41, *citing* 18 U.S.C. § 3553(a)(1) and (a)(2)(A), (B) & (C). During the sentencing hearing, the prosecutor twice referenced the destruction of evidence in Las Vegas. *See* ER-15 (prosecutor stating that Mr. Carpoff "sent Mr. Bayless to Nevada to go destroy those VIN stickers"); *see also* ER-14. And the district court itself recognized the importance of the evidence with respect to the sentence imposed, stating that "even when Mr. Carpoff learned of the investigation, he did attempt to have others destroy evidence and told others to falsify reports." ER-33.

15

The government argues that Mr. Carpoff's post-search conduct "was only one among numerous negative facts the [district] court cited in pronouncing sentence[.]" Gov't Br. 30. It is of course true that the district court did not impose a 30-year sentence solely based on Mr. Carpoff's post-search conduct, and the parties in fact *agreed* that the underlying conduct justified a severe punishment. *See* ER-107 (plea agreement providing that "[t]he defendant may request a sentence within the range of 25 years to 30 years" but "will not request that the Court apply the [section 3553] sentencing factors to arrive at any sentence less than 300 months (25 years) in custody"); *see also* ER-84–85, ER-88. However, the question at sentencing was whether Mr. Carpoff should receive the full statutory maximum sentence of 30 years, or whether a shorter – but still very serious – custodial sentence should be imposed. *Id.* As shown by the government's sentencing memorandum and the prosecutor's presentation at the sentencing hearing (ER-14–15, ER-41–42), Mr. Carpoff's alleged post-search conduct formed a critical part of the government's justification for the full 30-year custodial sentence.

Given the significant role that Mr. Carpoff's post-search conduct played at sentencing, the government cannot show that "it is clear that no prejudice resulted[]" from the district court's Rule 32(i)(1)(A) violation. *Davila-Escovedo*, 36 F.3d. at 844; *see also* Gov't Br. 23. This Court should remand the matter for resentencing.

\ \ \

\ \ \

16

## CONCLUSION

Based upon the foregoing, the Court should vacate Mr. Carpoff's sentence and remand for resentencing.

Dated: March 20, 2023                              Respectfully submitted,

                                                    /s/ Alexis Haller
                                                   Alexis Haller

                                                   Attorney for Defendant-Appellant
                                                   Jeff Carpoff

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 21-10356

I am the attorney or self-represented party.

**This brief contains** 4,450 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Alexis Haller  **Date** 3/20/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 20, 2023.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

 /s/ Alexis Haller
Alexis Haller